IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

TIFFANY CONWAY,                    )
                                   )
            Plaintiff,             )
                                   )
      v.                           )      No.  11 C 7257
                                   )
CHICAGO HOUSING AUTHORITY,         )
et al.,                            )
                                   )
            Defendants.            )

<u>MEMORANDUM OPINION AND ORDER</u>

Tiffany Conway ("Conway") has filed a pro se Complaint[1]

against the Chicago Housing Authority ("CHA"), Walsh Construction

Company ("Walsh") and Illinois Window and Glass, Inc. ("Illinois

Glass"),[2] charging employment discrimination in violation of 42

U.S.C. §2000e ("Title VII"), 42 U.S.C. §1981 ("Section 1981") and

Section 3 of the Housing and Urban Development Act of 1968, 12

U.S.C. §1701u ("Section 1701u").  CHA has filed a motion to

dismiss under Fed. R. Civ. P. ("Rule") 8(a), 12(b)(1) and

12(b)(6), which was then joined and adopted by Illinois Glass.

Walsh has also filed a motion to dismiss under Rules 8(a),

12(b)(1) and 12(b)(6), which was joined and adopted by CHA.

---

[1] Conway's Complaint will be construed "liberally," as all
pro se complaints must be (<u>Gould v. Schneider</u>, 448 F. App'x 615,
618 (7th Cir. 2011)).  But in the intervening months since her
Complaint, counsel has been appointed to represent Conway, and it
was appointed counsel who filed the response to Walsh's motion to
dismiss.

[2] Additional parties were originally named in the suit (on
both sides), but they were previously dismissed for reasons
unrelated to the present motions (Dkt. Nos. 15-16).

For the reasons set out in this opinion:

1.  All Section 1701u claims against all three defendants are dismissed with prejudice.

2.  All Title VII claims against Walsh and CHA are also dismissed with prejudice

3.  All Section 1981 claims against Walsh and CHA are also dismissed with prejudice.

4.  All motions targeting the Title VII and Section 1981 claims against Illinois Glass are denied.

This opinion will discuss the claims in terms of their respective subject matters, rather than in the sequence suggested by the above enumeration.

**Standards of Review**

Under Rule 12(b)(6) a party may move for dismissal of a complaint on the ground of "failure to state a claim upon which relief can be granted." Although familiar Rule 12(b)(6) principles require the district court to accept as true all of plaintiff's well-pleaded factual allegations, drawing all reasonable inferences in plaintiff's favor (Christensen v. County of Boone, 483 F.3d 454, 457 (7th Cir. 2007) (per curiam)), "legal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to this presumption of truth" (McCauley v. City of Chicago, 671 F.3d 611, 616 (7th Cir. 2011)). Rule 12(b)(1) motions to dismiss for lack of subject

matter jurisdiction are evaluated under the same standard
(<u>Scanlan v. Eisenberg</u>, 669 F.3d 838, 841 (7th Cir. 2012)).

In recent years the Supreme Court has made an important
change in the evaluation of Rule 12(b)(6) motions.  <u>Bell Atlantic
Corp. v. Twombly</u>, 550 U.S. 544, 562-63 (2007) was the first case
to repudiate, as overly broad, the half-century-old formulation
announced in <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957) "that a
complaint should not be dismissed for failure to state a claim
unless it appears beyond doubt that the plaintiff can prove no
set of facts in support of his claim which would entitle him to
relief."  <u>Twombly</u>, 550 U.S. at 570 held that to survive a Rule
12(b)(6) motion a complaint must provide "only enough facts to
state a claim to relief that is plausible on its face."  Or put
otherwise, "[a] claim has facial plausibility when the plaintiff
pleads factual content that allows the court to draw the
reasonable inference that the defendant is liable for the
misconduct alleged" (<u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009),
citing <u>Twombly</u>, 550 U.S. at 556).  <u>Erickson v. Pardus</u>, 551 U.S.
89 (2007)(per curiam) and <u>Iqbal</u> have provided further Supreme
Court enlightenment on the issue.

Our Court of Appeals has "interpreted <u>Twombly</u> and <u>Iqbal</u> to
require the plaintiff to provid[e] some specific facts to support
the legal claims asserted in the complaint" (<u>McCauley</u>, 671 F.3d
at 616 (internal quotation marks omitted)).  <u>McCauley</u>, <u>id</u>.

(internal quotation marks again omitted) went on to reconfirm that "the plaintiff must give enough details about the subject-matter of the case to present a story that holds together," and Brooks v. Ross, 578 F.3d 594, 581 (7th Cir. 2009) has confirmed that plaintiff may not "merely parrot the statutory language of the claims that they are pleading."

## Statement of Facts[3]

Conway, an African American woman, was at all relevant times a "low income resident" of the Altgeld Gardens public housing development on the south side of Chicago (Compl. ¶2). CHA owns and operates Altgeld Gardens and receives federal funds from the United States Department of Housing and Urban Development ("HUD") for the operation and rehabilitation of the site (id. ¶3). Walsh, a private construction company, had a construction contract with CHA for work at Altgeld Gardens in 2009-2010 (id. ¶4). That contract was funded with federal funds from HUD and was subject to Section 1701u's regulatory requirements (id.). Illinois Glass, also a private company, was a subcontractor for Walsh and, as such, also contracted to do work on the Altgeld Gardens project (id. ¶5) under a contract that was also funded by

---

[3] Allegations in Conway's Amended Complaint will be cited "Compl. ¶--." CHA's memorandum accompanying its motion to dismiss will be cited "CHA Mem. --," Walsh's memorandum will be cited "W. Mem. --," with Conway's response to that memorandum cited "C. Resp. Mem. --" and Walsh's reply to that response cited "W. R. Mem. --."

federal HUD funds (id.).

Conway was employed[4] by Illinois Glass as a "gatekeeper" on the Altgeld Gardens construction site from November through December 2009 (Compl. ¶8).  Conway advances several allegations attributed to that time period.

First, she charges a violation of Section 1981 by Walsh and Illinois Glass because she was "denied the same employment contract rights that [Walsh and Illinois Glass] provided to white employees during this same period" (id. ¶13).  Second, she asserts a violation of Section 1701u because she was "denied priority employment opportunities" by CHA, Walsh and Illinois Glass and because CHA, Walsh and Illinois Glass "did not offer training and or employment opportunities to the greatest extent possible" (id. ¶¶14, 19).  In particular Conway alleges that "she was subjected to different treatment by [Walsh and Illinois Glass] because of her race and sex, when she was monitored more closely than white or male employees in November and December 2009, and given discipline for minor offenses during this period that were not given to white and or male employees" (id. ¶15). Conway also claims a violation of Title VII, Section 1981 and Section 1701u, alleging that CHA and Walsh "knew about, and or

---

[4] Whether or not Conway was an "employee" of any of the defendants is disputed and will be discussed below.  Hence the use of the term "employed" in this Statement of Facts is merely for convenience and should not be understood as a ruling on that legal issue.

were informed about, the disparate treatment accorded to [Conway] at the time these acts occurred, and or shortly after their occurrence, and did not take steps to stop and or rectify the disparate treatment" (id. ¶18). No further detail is provided by the Complaint on the factual circumstances surrounding those legal allegations.

On December 23, 2009 Conway filed a pro se charge against Illinois Glass[5] with the United States Equal Employment Opportunity Commission ("EEOC"), asserting that she had been the victim of employment discrimination based on race and sex (id. ¶11). Specifically Conway alleged (C. Resp. Mem. Ex. 1):

> I began working for Respondent [Illinois Glass] on
> November 9, 2009. My most recent position was
> gatekeeper. During my employment, I was subjected to
> harassment. On or around December 8, 2009, I expressed
> interest in the position of flagger. I was not
> selected for the position. Other non-Black, non-female
> employees have been treated better than me.
>
> I believe that I have been discriminated against
> because of my race, Black, and my sex, female, in
> violation of Title VII of the Civil Rights Act of 1964,
> as amended.

Conway received a right to sue letter on July 19, 2011 (id.), and on October 11, 2011 Conway filed her Complaint here.

## Conway's Claims

### Failure To Exhaust Administrative Remedies for Title VII Claims

Walsh first argues that Conway's Title VII claims should be

---

[5] Illinois Glass was the only party named in the charge (more on this subject later).

dismissed because she failed to name Walsh or CHA in her EEOC charge. It is well-settled that a plaintiff generally cannot bring such Title VII claims unless they were originally contained in the EEOC charge (Cheek v. W. & S. Life Ins. Co., 31 F.3d 497, 500 (7th Cir. 1994)). But "a Title VII plaintiff need not allege in an EEOC charge each and every fact that combines to form the basis of each claim in her complaint" (id.). Instead a claim is cognizable "if there is a reasonable relationship between the allegations in the charge and the claims in the complaint, and the claim in the complaint can reasonably be expected to grow out of an EEOC investigation of the allegations in the charge" (id.).

Conway was required to bring an EEOC discrimination charge within 300 days of the allegedly unlawful employment practice (42 U.S.C. §2000e-5(e)(1); 42 U.S.C. §12117(a)), but she never filed any such charge against either Walsh or CHA (see W. Mem. Ex. 1). Instead her EEOC charge alleged discrimination only on the part of Illinois Glass (C. Resp. Mem. Ex. 1).

Though Conway acknowledges those facts, she contends that this Court should recognize an exception to the general exhaustion requirement. To that Conway points to the exception marked out in Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130, U. A., 657 F.2d 890, 905 (7th Cir. 1981):

> where an unnamed party has been provided with adequate notice of the charge, under circumstances where the party has been given the opportunity to participate in conciliation proceedings aimed at voluntary compliance.

But she simply fails to bring herself within either of those conditions (id. at 905-07).

Eggleston, id. at 908, also employed a four-factor test, which had originated in the Third Circuit, in determining whether to excuse a plaintiff's failure to name a defendant in an EEOC charge:

> (1) Whether the role of the unnamed party could through reasonable effort by the complainant be ascertained at the time of the filing of the EEOC complaint.
>
> (2) Whether, under the circumstances, the interests of a named party are so similar to the unnamed party's that for the purpose of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceedings.
>
> (3) Whether its absence from the EEOC proceedings resulted in actual prejudice to the interests of the unnamed party.
>
> (4) Whether the unnamed party has in some way represented to the complainant that its relationship with the complainant is to be through the named party.

Again, despite Conway's assertions to the contrary, none of those four factors--either alone or in combination--weighs in favor of excusing her failure to name CHA and Walsh in the EEOC complaint. Although that strikes this Court as so obvious that extended exposition is unnecessary, a brief explanation follows in the interest of thoroughness.

First, there is no reason to believe that Conway could not have ascertained CHA's and Walsh's involvement "through reasonable effort." Conway argues that because she filed her

complaint pro se, the very fact that she omitted any reference to Walsh and CHA means that their involvement was unascertainable. That contention--really a circular one--falls flat. Conway makes no allegation that their involvement was somehow hidden from her. Indeed, as Walsh points out, less than three weeks after Conway filed her EEOC charge she filed another complaint with HUD in which she did name Walsh and CHA (W. R. Mem. Ex. 1)!

Second, there are no allegations that the interests of Illinois Glass, Walsh and CHA are so intertwined that it would be "unnecessary" to name the latter two parties. Conway's purported responses are in fact wholly unresponsive to the issue. She asserts, totally without any basis in logic, that the allegations in her own EEOC charge support the inference that she believed that the defendants were somehow acting together. As Walsh correctly observes, CHA, Walsh and Illinois Glass are entirely separate entities with separate sources of funding and separate interests, and the fact that they were involved in a contractual relationship with one another on the same construction project does not alter that separateness vis-a-vis Conway.

Third, the fact that Walsh and CHA were not on notice of Conway's grievances until the filing of this lawsuit was clearly prejudicial to them. They lost any access to possible conciliation--any opportunity for resolution short of litigation. Conway offers no argument to the contrary.

Fourth, there is no indication that any of the three defendants represented to Conway "that its relationship with the complainant is to be through the named party." Conway recycles the same unsupported--and unsupportable--ipse dixit that the allegations of her complaint itself lead to the inference that Conway <u>believed</u> that her relationship to Illinois Glass was through Walsh and CHA.

Finally, Conway makes one last puzzling argument that her (C. Resp. Mem. 6):

> allegation[s] bring Walsh and CHA within the ambit of the EEOC complaint because allegations, in part, were aimed at not being hired for a flagger position, a job that 12 U.S.C. §1701u entitled her to preferential treatment when applying for. Accordingly, both Walsh and CHA would likely have had an opportunity to participate in the conciliation process, if so desired, and plaintiff's Title VII allegations should be permitted.

That argument is nonsensical and does not address any of the issues presented by the four-factor test.

In sum, Conway has failed every facet of the four-factor analysis. And because the 300-day time limit on filing EEOC charges has already run, that failure is not remediable. Hence all Title VII charges against Walsh and CHA are dismissed with prejudice.[6]

_____

[6] While Title VII claims and Section 1981 claims are often analyzed together for substantive purposes, Section 1981 carries no exhaustion requirement (<u>Bullard v. Sercon Corp.</u>, 846 F.2d 463, 469 (7th Cir. 1988)). So the foregoing analysis applies only to Conway's Title VII claims.

**Standing**

CHA next urges that dismissal is proper under Rule 12(b)(1) on the premise that Conway lacks standing because she assertedly (1) fails to "allege an injury in fact, specific conduct or a sufficient causal connection of a particular injury against CHA" and (2) cannot pursue her claims on behalf of "'other aggrieved persons' because she is not an attorney and Plaintiff cannot individually assert the rights of third parties in federal court" (CHA Mem. 3). Neither contention survives scrutiny.

As for the first, to establish standing a plaintiff must show (1) an injury in fact, (2) a causal connection between that injury and defendant's conduct and (3) that it is likely, as opposed to merely "speculative," that the injury will be redressed by a favorable decision (Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992)). At the pleading stage, "general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim" (id. at 561). At this early point in the litigation, Conway has met that burden by alleging that the defendants injured her by taking certain adverse employment actions against her.

As to the second argument, this Court's August 9, 2012 memorandum opinion and order has already stated that "it seems

abundantly clear that this case must be perceived as only a one-party pro se action" and that "the fair reading of the complaint in each case is that the asserted treatment of other African-Americans is sought to be relied on as evidence of the defendants' race-discriminatory intent" (Dkt. No. 42 at 3). On that ground as well, then, Conway has standing to assert her claims.

**No Private Right of Action Under Section 1701u**

Walsh and CHA next argue that dismissal is proper under Rule 12(b)(1) because Section 1701u provides no private right enforceable either through 42 U.S.C. §1983 ("Section 1983") or through an implied right of action.[7] Either way a court must first inquire "whether or not Congress intended to confer individual rights upon a class of beneficiaries" (Gonzaga Univ. v. Doe, 536 U.S. 273, 285 (2002)).[8] That inquiry focuses on a

---

[7] It is unclear whether Conway is arguing that Section 1701u is enforceable (1) through Section 1983 or (2) on its own through an implied private right of action. Although Section 1983 is mentioned nowhere in the pleadings, Conway does advance this argument in her reply memorandum. Pro se litigants are not required to refer correctly to the precise statute or legal theory to state a claim (Kennedy v. Nat'l Juvenile Det. Ass'n, 187 F.3d 690, 695 (7th Cir. 1999)) but as stated earlier the reply memorandum was the work product of appointed counsel. All the same, this opinion will give Conway the benefit of an assumption that she too meant to assert both positions, and it will accordingly address both.

[8] Although later steps of the analysis differ between Section 1983 and an implied private right of action, that initial inquiry is the same in either scenario (id. at 283).

three factor test: (1) "Congress must have intended that the provision in question benefit the plaintiff," (2) "the plaintiff must demonstrate that the right assertedly protected by the statute is not so vague and amorphous that its enforcement would strain judicial competence" and (3) "the provision giving rise to the asserted right must be couched in mandatory, rather than precatory, terms" (id. at 282, quoting Blessing v. Freestone, 520 U.S. 329, 340-41 (1997)). As Gonzaga, id. at 290 (emphasis added) concluded:

> In sum, if Congress wishes to create new rights enforceable under §1983, it must do so in clear and unambiguous terms-no less and no more than what is required for Congress to create new rights enforceable under an implied private right of action.

To perform that three-factor inquiry, it is necessary to turn to the text of the statute. Section 1701u(c)(1)(A) and (c)(2)(A) provide in relevant part:

> The Secretary shall require that public and Indian housing agencies, and their contractors and subcontractors, make their best efforts, consistent with existing Federal, State, and local laws and regulations, to give to low- and very low-income persons the training and employment opportunities generated by development assistance..., operating assistance...and modernization grants....
>
> *        *        *
>
> In other programs that provide housing and community development assistance, the Secretary shall ensure that, to the greatest extent feasible, and consistent with existing Federal, State, and local laws and regulations, opportunities for training and employment arising in connection with a housing rehabilitation (including reduction and abatement of lead-based paint

hazards), housing construction, or other public
construction projects are given to low--and very
low--income persons residing within the metropolitan
area (or nonmetropolitan county) in which the project
is located.

That language clearly meets the third factor of the Gonzaga
test, for it expressly provides that the Secretary "shall
require" and "shall ensure" that the requirements are met.  But
further analysis confirms that the other two factors are not
satisfied.

While Section 1701u is clearly meant to benefit low income
persons, "it is rights, not the broader or vaguer 'benefits' or
'interests,' that may be enforced" under Section 1983 or an
implied right of action (Gonzaga, 536 U.S. at 283, emphasis in
original).  Several aspects of Section 1701u weigh against a
finding that Congress intended to provide an individual right of
action.

First, "[f]or a statute to create such private rights, its
text must be phrased in terms of the persons benefitted"
(Gonzaga, 536 U.S. at 284 (internal quotation marks omitted)).
Section 1701u addresses itself to the Secretary of HUD, rather
than speaking directly in terms of granting rights to the low-
income individuals whose interests HUD is required to promote
(see id. at 284 n.3).  And Alexander v. Sandoval, 532 U.S. 275,
289 (2001)(internal quotation marks omitted) has told us that
"[s]tatutes that focus on the person regulated rather than the

individuals protected create no implication of an intent to confer rights on a particular class of persons."

Second, Section 1701u does not say anything about individual instances of discrimination against low income persons. It addresses itself only to the general policy of using "best efforts" to offer low income persons employment and training and ensuring compliance "to the greatest extent feasible." That type of "aggregate focus" indicates that the statute is "not concerned with whether the needs of any particular persons have been satisfied" (Gonzaga, 536 U.S. at 288, again quoting Blessing).

Third, Section 1701u requires employers to "make their best efforts" to give low income persons opportunities. It does not call for perfect compliance. That too contraindicates any conclusion that Congress intended to provide a right of action to every individual who is not offered such an opportunity (see Gonzaga, id.).

Finally, the fact that there are administrative remedies available to redress violations of Section 1701u (see 24 C.F.R. §135.76) weighs against finding a private right of action (Gonzaga, 536 U.S. at 288). Ultimately, "where the text and structure of a statute provide no indication that Congress intends to create new individual rights, there is no basis for a private suit, whether under §1983 or under an implied right of

action" (<u>id</u>. at 286).[9]

In sum, as there is no private right of action under Section 1701u, all claims pursuant to that statute must be dismissed with prejudice.  Hence there is no need to address the parties' other arguments as to those claims.

**Failure To State a Claim under Title VII and Section 1981**

After the analysis to this point, only Conway's Section 1981 claims against Walsh, CHA and Illinois Glass and her Title VII claims against Illinois Glass remain for consideration.[10]  Title VII provides that it is unlawful for an employer:

> to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.

And Section 1981 provides:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, as is enjoyed

---

[9] District Courts examining the issue have reached the same conclusion (see, e.g., <u>Miller v. CHA</u>, No. 11 C 8625, 2012 WL 2116190, at *3-*4 (N.D. Ill. June 8); <u>Price v. Hous. Auth. of New Orleans</u>, No. 09-4257, 2010 WL 1930076, at *3-*5 (E.D. La. May 10); <u>Nails Constr. Co. v. City of St. Paul</u>, No. 06-2657, 2007 WL 423187, at *3-*5 (D. Minn. Feb. 6)).

[10] It is unclear from Conway's complaint whether she is advancing both Title VII and Section 1981 claims against all three defendants.  But construing the pro se complaint liberally, this Court will so assume.  As Title VII cases are analyzed in the same fashion as Section 1981 cases (<u>Yancick v. Hanna Steel Corp.</u>, 653 F.3d 532, 544 (7th Cir. 2011)), the claims will  be yoked together.

by white citizens.

To establish a claim under Section 1981, Conway must show that (1) she is a member of a racial minority,[11] (2) a defendant had an intent to discriminate on the basis of race[12] and (3) the discrimination concerned one or more of the activities enumerated in the statute (here the making and enforcing of an employment contract) (<u>Morris v. Office Max, Inc.</u>, 89 F.3d 411, 413 (7th Cir. 1996)).  Conway can make her Title VII case through direct evidence of discrimination or indirectly by showing that "(1) she is a member of a protected class; (2) her performance met her employer's legitimate expectations; (3) despite this performance, she was subjected to an adverse employment action; and (4) her employer treated similarly situated employees outside of the protected class more favorably" (<u>Barricks v. Eli Lilly & Co.</u>, 481 F.3d 556, 559 (7th Cir. 2007)).  But Conway does not need to provide specific facts corresponding to each of those elements at this stage of the litigation.  <u>Bennett</u>, 153 F.3d at 518 has specifically held that in discrimination cases "'I was turned down for my job because of my race' is all a complaint has to

---

[11] There is of course no dispute that this element is met.

[12] Under Rule 9(b) intent may be averred generally in race discrimination cases (<u>Bennett v. Schmidt</u>, 153 F.3d 516, 518 (7th Cir. 1998)).

say."[13]  So while Conway's pleadings are somewhat vague, that
alone is not enough to warrant dismissal.

Conway makes several relevant claims.  First, she alleges
that she "suffered employment discrimination because of [my] race
in November and December of 2009, and, as a result [was] denied
the same employment contract rights that Defendants [Walsh and
Illinois Glass] provided to white employees during this same
period" (Compl. ¶13).  Second, she alleges that Walsh and CHA
"knew about, and or were informed about, the disparate treatment
accorded to Plaintiff[ ] Conway...at the time these acts
occurred, and or shortly after their occurrence, and did not take
steps to stop and or rectify the disparate treatment described
herein, despite a duty to do so under Title VII, [Section 1981
and Section 1701u]" (id. ¶18).  Conway's only specific
allegations of mistreatment are that she was "subjected to
different treatment by [Illinois Glass and Walsh] because of her
race and sex, when she was monitored more closely than white and
or male employees in November and December of 2009, and given
discipline for minor offenses during this period that were not
given to white and or male employees" (id. ¶15).

Those allegations suffice to state a claim against Illinois

---

[13] While Bennett antedated Twombly and Iqbal, the Seventh
Circuit has continued to reaffirm its holding (Tamayo v.
Blagojevich, 526 F.3d 1074, 1084 (7th Cir. 2008); see also EEOC
v. Concentra Health Servs., Inc., 496 F.3d 773, 781-82 (7th Cir.
2007)).

Glass on both Section 1981 and Title VII grounds, but not against Walsh or CHA (even apart from the fact that any Title VII claims against Walsh and CHA fail independently because of Conway's failure to exhaust administrative remedies). Conway has clearly alleged that she was employed by Illinois Glass, and <u>Walker v. Abbott Labs.</u>, 340 F.3d 471, 475-78 (7th Cir. 2003) has held that an employment relationship--even if it is at-will--is sufficient to form a "contract" within the meaning of Section 1981. But Conway has not alleged that she was employed by Walsh or CHA (for Title VII purposes) or that she had any contract with Walsh or CHA (for Section 1981 purposes).[14]

Conway argues that a person may have more than one "employer" when there is more than one company that controls her work environment (C. Mem. 7-8, citing <u>Tamayo</u>, 526 F.3d at 1088). That is so as a statement of law in general, but it does not apply to Conway's situation. In <u>Tamayo</u> the plaintiff alleged that while one entity controlled her hiring and promotion, another entity controlled her compensation, made certain personnel decisions and made the decision not to give her a promised raise (<u>id</u>. at 1087). Conway advances no analogous facts. She alleges only that she was employed by Illinois Glass, that Illinois Glass was a subcontractor of Walsh and that CHA

---

[14] While non-employees (such as independent contractors) can bring Section 1981 cases, they must still show that there was some kind of contract.

hired Walsh for the construction project. There is no assertion that CHA or Walsh had any control over any aspect of her employment (contrast <u>Tamayo</u>, <u>id</u>. at 1089).

In summary, even where the Complaint here is viewed liberally and with all inferences in favor of Conway, she has alleged nothing to support a proposition that she had any kind of employment contract (at-will or otherwise) with Walsh or CHA, nor has she alleged that Walsh or CHA had any kind of control over her employment (<u>EEOC v. N. Knox Sch. Corp.</u>, 154 F.3d 744, 747 (7th Cir. 1998)).

Nor does Conway's assertion that Walsh and CHA had a "duty" to prevent the alleged "disparate treatment" have any merit. Though she contends that <u>EEOC v. Pipefitters Ass'n Local Union 597</u>, 334 F.3d 656 (7th Cir. 2003) "clearly establishes" such a duty (C. Mem. 7-8), that case stated only that "[a]n <u>employer</u> who is aware of racial or sexual harassment that is making the workplace intolerable for the targets of the harassment, and does nothing to correct the situation, is guilty of violating Title VII" (<u>id</u>. at 658, emphasis added). As already discussed, neither Walsh nor CHA was Conway's "employer." <u>Pipefitters</u>, <u>id</u>. at 659-63 went on to hold that a union that does not exercise control over the circumstances of a workplace does <u>not</u> have an affirmative duty under Title VII to step in and prevent workplace discrimination.

It is thus clear that neither Walsh nor CHA had any affirmative duty to act in this situation (see <u>Gen. Bldg. Contractors Ass'n, Inc. v. Pennsylvania</u>, 458 U.S. 375, 396-97 (1982)). Section 1981 mandates that employers may not intentionally discriminate against minority employees. It does not transform any entity into "the guarantor[ ] of the workers' rights as against third parties who would infringe them" (<u>id</u>. at 396). Accordingly all claims against Walsh and CHA under Title VII and Section 1981 are dismissed.

While Conway's claims against Walsh and CHA have fallen, her Title VII and Section 1981 claims against Illinois Glass are sufficient to meet her low burden at this stage of the litigation. She has alleged that she was employed by Illinois Glass, that Illinois Glass took certain adverse actions against her because of her race or sex and that other non-minority employees were treated more favorably. That suffices to survive a Rule 12(b)(6) motion to dismiss (<u>Bennett</u>, 153 F.3d at 518).

## Conclusion

To recap what was said at the outset of this opinion, all claims against Illinois Glass, Walsh and CHA under Section 1701u and all Title VII and Section 1981 claims against Walsh and CHA are dismissed with prejudice. Claims under Title VII and Section 1981 against Illinois Glass are not dismissed. This action is

set for a status hearing on April 4 at 9 a.m.

_____
Milton I. Shadur
Senior United States District Judge

Date:  March 25, 2013